ROBY v. REED.

Where a horse escapes from the close of A., where he rightfully is, into an adjoining close of B., through the fault of B. in taking down a sufficient division fence which A. is bound to maintain, B. is liable in trespass for turning the horse into the highway, whereby he is lost.

TRESPASS, for taking and driving away the plaintiff's horse, against his consent, whereby he lost the same. Plea, the general issue, with a brief statement, that the horse was wrongfully in the close of the defendant Osgood, and that the defendant Reed, as her servant, turned him into the highway, as he lawfully might.

It appeared that the horse was rightfully in the pasture of one Fellows, whose land adjoined the field of Osgood, and that the fence between them had been divided; that Reed, having occasion to go through the pasture with a

load of rye, took down a length of the fence on that part which belonged to Fellows to maintain; and the defendant's evidence tended to show that he replaced it in as good condition as it was before; while the plaintiff's evidence tended to show that it was left broken and down, and also tended to show that the horse escaped from the pasture into the field of Osgood at the place where the fence had been taken down. The fence was taken down by Reed, five days before the horse escaped, but it did not appear that Fellows had any personal knowledge of it. The evidence further tended to show that Reed, finding the horse in the field, as the servant of Osgood, with her concurrence, turned him into the road and he was lost.

The court instructed the jury that if they found that Fellows had a good and sufficient fence between the pasture and the field, in that part which he was bound to keep up, and that the horse escaped into the field through the fault of the defendants in taking down the fence and not replacing it, their verdict should be for the plaintiff, otherwise for the defendants.

The jury returned a verdict for the plaintiff, and the question of the plaintiff's right to recover was transferred, it being agreed that there should be judgment on the verdict, or that it should be set aside and a nonsuit entered, according to the opinion of the court.

*W. H. Rollins*, for the defendants.

I. The plaintiff has no claim against the defendants, for as the horse entered the field through a fence which Fellows was bound to maintain, the turning the horse into the road was a legal act. *Prima facie*, when the sheep of one man are in the close of another, the owner has a right to drive them out. *Richardson*, C. J., in *Gibson v. Fish*, 8 N. H. 405; see, also, *Cory v. Little*, 6 N. H. 213. The act of taking down the fence is one which cannot give this plaintiff any additional rights, for he has nothing to

do with that. It cannot in any event turn the legal act of driving out the horse into a trespass. Fellows might have his action of trespass against Reed for taking·down the fence, and in that action might recover the value of the horse, unless he has been estopped by his neglect to put the fence in good condition. Whether he had sufficient time to restore the fence is a question that should have been left to the jury.

II. But if the plaintiff has any claim against these defendants, his remedy is by a special action on the case, because the injury is not immediate, but only consequential from the illegal act. *Dalton* v. *Favour*, 3 N. H. 466 ; 1 Ch. Pl. 126, 127.

III. Even if this action can be maintained against the defendant Reed, it cannot against the defendant Osgood. (1.) Because the master and servant cannot be made jointly liable in an action of tort, for an act of the servant committed without the direct orders of the master. *Parsons* v. *Winchell*, 5 Cush. 592 ; *Wright* v. *Wilcox*, 19 Wend. 343. In this case there is no pretence of any assent by Mrs. Osgood to the act of taking down the fence, either prior or subsequent. (2.) Because the master is not liable, in an action of trespass, for the act of the servant, unless the master is himself active, as by giving orders for the act. *McManus* v. *Critchett*, 1 East 106 ; *Bowcher* v. *Noidstrom*, 1 Taunt. 567 ; *Morley* v. *Gaisford*, 2 H. Bl. 442. (3.) But even if it had been proved that she directed Reed to turn the horse out, this action could not be maintained against her ; she had a right to presume that the horse was wrongfully on her land, and might then have turned the horse out—the taking down the fence not having come to her knowledge. But the question whether Mrs. Osgood ordered it or concurred in it should have been left to the jury ; and as it was not, it must be presumed that it was not proved, though there may have been some evidence tending to show a concurrence.

*Wood,* for the plaintiff.

.The act of the defendants was wrongful. Their duty was to return the horse to the pasture from which, by their own fault, he had escaped. Any other course was wrongful and a trespass. For a case exactly in point we refer the court to *Carruthers* v. *Hollis,* 8 Ad. & El. 113.

Doe, J. It is not disputed that the plaintiff, at the time of the alleged trespass, was the owner, and had the constructive possession of the horse. The plaintiff's evidence tended to show that Reed, as the servant of Osgood, and with her concurrence, turned the horse into the highway. The phrase, " as the servant of Osgood," implies that in the act of turning the horse into the highway, Osgood was principal and Reed agent, and the act of Reed, being with her concurrence, was their joint act. Those authorities, therefore, which hold that a master and servant are not jointly liable in tort for the negligence of the servant in the master's absence, are not in point, the ground of those authorities being that the negligence is not joint, and that for such negligence the servant may be liable to the master for the damages which the master may be compelled to pay; and if the master should satisfy an execution against them both, as joint wrong doers, he could not call on the servant for reimbursement.

The justification set up is, that the horse was wrongfully in the close of Osgood, and that Reed, as her servant, turned him into the highway. If the horse was wrongfully in the close of Osgood, the defendants were justified, and the only question is whether the horse was wrongfully there.

It is immaterial that the horse did not escape from the pasture till five days after the fence was taken down, because it does not appear that Fellows knew, or that, by the exercise of ordinary care and diligence, he would have

known that the fence had been taken down. If Fellows had known that the fence was left insufficient by Reed, there might be good reason to hold, as against Fellows, that he should have repaired it within a reasonable time, and that he could not throw upon Osgood the burden of always maintaining his fence, merely because she was once liable for a trespass in taking it down. But Fellows does not appear to have been in any fault.

The evidence was conflicting upon the question whether Reed replaced the fence in as good condition as he found it; but the jury must have found, under the instructions of the court, that the horse escaped from the pasture where he rightfully was, into the adjoining close of Osgood, through the fault of both the defendants in taking down and not replacing a good and sufficient division fence, which Fellows, the owner of the pasture, was bound to maintain. It could not be said that the horse would have been wrongfully in Osgood's close if he had been there on account of the neglect of Osgood to build a fence which she was bound to maintain. Neither can his being there be considered wrongful, as to the defendants, when it was owing to a defect in Fellows' fence caused by them. If the horse was there by the wrongful act of the defendants, without any fault of others, it would seem to be immaterial what that wrongful act was. If the defendants had led or driven the horse into Osgood's close, it would not be for them to say that he was wrongfully there; at least, not until the plaintiff or Fellows had notice, and an opportunity to take him away. Causing a defect in Fellows' fence was a wrongful act of the defendants; the jury have found that the horse was in Osgood's close by reason of that act, and the defendants are as responsible for his being there as if they had driven him there. To allow them to say he was wrongfully there would be to permit them to take advantage of their own wrong.

It is objected that no evidence is reported in the case to

show that Osgood was responsible for the act of Reed, in causing the defect in the fence, and that, therefore, so far as she is concerned, the horse was wrongfully in her close. But the agreement of the parties, stated in the case, was evidently not intended to make such a distinction between the liability of Osgood and the liability of Reed, for it does not provide how the action is to be disposed of, if it can be maintained against one and not against the other. The jury have found that the defect in the fence was from the fault of both defendants, and doubtless there was evidence to that effect.

*Judgment on the verdict.*